E-Filed 1/22/16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN BRINKER,<br><br>        Plaintiff,<br><br>        v.<br><br>NORMANDIN'S, et al.,<br><br>        Defendants. | Case No. 14-cv-03007-EJD (HRL)<br><br>**ORDER ON DISCOVERY DISPUTE JOINT REPORT 1**<br><br>Re: Dkt. No. 60 |

      Alan Brinker ("Brinker") sues Normandin's d/b/a Normandin Chrysler Jeep Dodge Ram ("Normandin") and OneCommand, Inc. in this class-action for alleged violations of the Telephone Consumer Protection Act, 47 USC § 227 *et seq* ("TCPA"). Normandin provided Brinker a privilege log which identified certain documents Normandin did not intend to produce. Brinker disputed whether some of those documents could properly be withheld. Brinker and Normandin attempted to resolve the dispute but they were unable to do so. The parties therefore filed discovery dispute joint report ("DDJR") 1.

      Brinker claims three different types of documents have been improperly withheld: (1) documents withheld for "Privacy" and "Trade Secret" reasons; (2) documents withheld on the basis of attorney-client privilege but that are not communications between attorneys and clients; and (3) documents withheld on the basis of attorney-client privilege but that were also sent to non-clients. Brinker also argues Normandin has invoked the work-product doctrine for every document purportedly protected by attorney-client privilege without making any showing that the work-product doctrine applies to any of them. Normandin responds: (1) documents which contain client email addresses, usernames, and passwords should not be produced because those are protected trade secrets; (2) Normandin did not previously explain why the work-product doctrine applies because "plaintiff did not appear to desire an explanation"; (3) Joshua Jouvenat

1  ("Jouvenat"), an employee for a third-party vendor, also worked as an ESI consultant to create
2  some of the withheld documents "in anticipation of litigation and as a direct result of ongoing
3  litigation to prepare defenses for Normandin"; (4) attorney-client privilege attaches to
4  communications involving Jouvenat because "[h]is use as a consultant on matters requested by
5  counsel also includes communications with Normandin employees"; (5) attorney-client privilege
6  attaches to internal discussions between Normandin employees about privileged communications;
7  and (6) "Plaintiff has failed to meet his burden[.]"

## Discussion

As an initial matter, the court rejects nearly all of Normandin's work-product designations for a lack of supporting facts. Normandin has the burden to prove each "work product" document was generated "in anticipation of litigation or for trial[.]" Fed. R. Civ. P. 26(b)(3)(A); *e.g., Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010). Every single document designated as privileged was also labeled as work product, seemingly as a matter of course. Normandin recites legal standards, Dkt. No. 60 at 8, but makes no factual argument to support most of these work-product designations. The privilege log is too vague to make up for the deficiency in Normandin's portion of the DDJR. For instance, Mark Normandin sent Paul Normandin an email about "Gonzales" on February 4, 2015—Normandin asks the court to conclude from solely those facts that the email is protected work product prepared in anticipation of litigation or for trial. The court is not persuaded by the low degree of detail Normandin provides for most of its work-product designations.

Normandin brings only one colorable factual argument to support a subset of the work-product designations: Jouvenat "generated" work-product emails in his capacity as an ESI consultant. Dkt. No. 60 at 8. Brinker responds that Normandin initially identified Jouvenat only as an employee for a third-party company and that Normandin did not claim Jouvenat as a consultant when the parties attempted to resolve these discovery disputes. *Id.* at 3, 6. Normandin admits it did not identify Jouvenat as a consultant when the parties discussed these disputes, but Normandin argues that should not matter because "plaintiff did not appear to desire an explanation." *Id.* at 7. That claim seems disingenuous. The court requires parties to meet and

confer when they have discovery disputes so that they may explain their positions to each other and then seek common ground. The court is skeptical of the key factual claim—Jouvenat is a consultant for counsel who generated work-product emails—because Normandin conveniently raises that claim for the first time with the court instead of during the party-to-party discussions that were supposed to either resolve or else narrow the scope of these discovery disputes. Normandin's opportunistic claim fails to persuade the court that Jouvenat was actually retained as a consultant and tasked with the creation of work product. Normandin has not carried its burden of proof for any work-product designation and the court therefore rejects all of them.

Normandin provides no legal authority to support its decision to withhold "Privacy; Trade Secret" documents. In fact, Normandin does not discuss privacy at all in its portion of DDJR 1. Normandin instead argues only, with respect to these documents, that the disclosure of the usernames and passwords for proprietary software "would . . . violate trade secret information of a third party vendor" and that "there is no reason for plaintiff" to see those login credentials. Dkt. No. 60 at 7. Normandin provides no further details and no legal explanation for how that vague factual claim might matter here. Brinker has expressed, however, that he would be satisfied by the production of the "Privacy; Trade Secret" documents with the passwords redacted, i*d.* at 4, and Normandin makes no argument for why the other information in those documents should be withheld. Normandin shall produce the "Privacy; Trade Secret" documents with any login credentials redacted—this shall permit Normandin to withhold the information in those documents that Normandin has asked to withhold, and Brinker shall receive the subset of information that he actually seeks. Normandin shall also treat those documents, to the extent appropriate, as confidential documents subject to the terms of the protective order that governs this case.

The federal common law governs privilege claims in federal court when that claim does not relate to a "claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Federal law supplies the rule of decision in this case and the federal common law therefore governs Normandin's attorney-client privilege claim. Normandin has the burden to prove attorney-client privilege applies to withheld documents. *See, e.g., Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010). Federal privilege claims should be narrowly construed to serve

their underlying purposes. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012). Attorney-client privilege exists in order to encourage frank conversations between attorneys and clients. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Voluntary disclosure to a third party shows a client is comfortable discussing the disclosed information in situations less private than an attorney-client communication, and the privilege does not serve its underlying purpose when applied to information a client is already comfortable discussing in less private contexts. *Pacific,* 679 F.3d at 1126-27. The voluntary disclosure of a privileged communication to a third party "will [therefore] generally destroy" the attorney-client privilege for that communication. *Id.*

Normandin argues privilege applies to confidential attorney-client communications which are contained in emails between Normandin's employees. Dkt. No. 60 at 8. The court agrees that attorney-client privilege is not waived as to a particular communication when Normandin employees share that communication with each other. Still, attorney-client privilege prevents the disclosure of particular "communications" sent between attorneys and clients as opposed to the "disclosure of . . . underlying facts by those who communicated with the attorney[.]" *Upjohn*, 449 U.S. at 395. The mere fact that a non-privileged email contains a copy of a privileged communication does not extend privileged status to other facts or statements that are also contained within the non-privileged email. Parties might otherwise frustrate the eventual discovery of a non-privileged internal email simply by attaching a copy of a privileged communication. Normandin has made no other argument to justify the retention of these internal emails. Normandin shall therefore produce the purely internal emails it has withheld on attorney-client privilege grounds, but Normandin may redact any privileged attorney-client communications contained within them.

Normandin also argues that Federal Rule of Civil Procedure 26(b)(3)(A) attaches attorney-client privilege to all emails sent to or written by a consultant hired by counsel. Dkt. No. 60 at 8. True, attorney-client privilege may sometimes attach to communications if a consultant created them for the primary or predominant purpose of facilitating the provision of legal advice, *North Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1127 (N.D. Cal. 2003), but Normandin has argued only that Jouvenat was hired to provide technical assistance to counsel. Normandin also

misunderstands subsection (b)(3)(A)—it codifies the work-product doctrine, but it does not expand the distinct, common-law scope of attorney-client privilege. Normandin has therefore failed to show that attorney-client privilege attaches to any of the emails sent or received by Jouvenat.

The court notes that the scope of discovery permitted under Federal Rule of Civil Procedure 26 changed while this DDJR was pending. Parties may now obtain discovery, in general, on "any nonprivileged matter that is" both: (1) "relevant" to any claim or defense; and (2) "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This class action for statutory damages under the TCPA may eventually result in a substantial settlement or damages award. Brinker requests the production of certain documents that are likely to be relevant to liability; Normandin has not shown that it may rightly withhold those documents on any basis. Normandin considers the number of documents at issue in this DDJR to be "very small" in the context of this case. Dkt. No. 60 at 9. The court concludes that the materials requested by Brinker are relevant and that the burden of producing those materials would be proportional to the needs of this case.

## Conclusion

By February 20, 2016, Normandin shall produce the documents requested by Brinker in DDJR 1. Normandin may redact the customer login credentials contained within the requested "Privacy; Trade Secret" documents. Normandin may also redact any privileged attorney-client communications that are copied within other produced documents. Normandin shall provide a supplemental privilege log to show any redactions are justified.

**IT IS SO ORDERED.**

Dated: 1/22/16

_____
HOWARD R. LLOYD
United States Magistrate Judge