1  Steven M. Tindall, CSB #187862
   Email:  smt@classlawgroup.com
2  GIBBS LAW GROUP LLP
   505 14th Street, Suite 1110
3  Oakland, California 94612-1406
   Telephone: (510) 350-9700
4  Facsimile: (510) 350-9701

5  [Additional Counsel Appear on Signature Page]

6  *Attorneys for Plaintiffs and the Proposed Class*

7                  UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                     SAN JOSE DIVISION

| | |
|---|---|
| 9  ALAN BRINKER, AUSTIN RUGG, and ANA SANDERS, individually and on behalf of all others similarly situated, | NO.  5:14-cv-03007-EJD-HRL |
| 10 | **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| 11          Plaintiffs, | |
| 12      v. | |
| 13 NORMANDIN'S, a California corporation, d/b/a NORMANDIN CHRYSLER JEEP DODGE RAM, and ONECOMMAND, INC., | JURY TRIAL DEMAND |
| 14 | |
| 15          Defendants. | HON. EDWARD J. DAVILA |
| 16 | Complaint Filed:  July 1, 2014 |
| 17 | DATE:          November 16, 2017 |
| 18 | TIME:          9:00 a.m. LOCATION:   Courtroom 4 – 5th Floor |

19  TO:    DEFENDANTS NORMANDIN'S, a California corporation, d/b/a NORMANDIN
20           CHRYSLER JEEP DODGE RAM, and ONECOMMAND, INC., AND THEIR
           ATTORNEYS OF RECORD:

21           PLEASE TAKE NOTICE that on November 16, 2017, at 9:00 a.m., in Courtroom 4, 5th

22  Floor, of the U.S. District Court for the Northern District of California, 280 South 1st Street, San

1   Jose, California, 95113, Plaintiffs will move for preliminary approval of a class action

2   settlement.

3          This motion will be based on: this Notice of Motion, the following Memorandum of

4   Points and Authorities, Declaration of Beth E. Terrell in support of Motion for Preliminary

5   Approval of Class Action Settlement; the records and file in this action; and on such other matter

6   as may be presented before or at the hearing of the motion.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:14-CV-03007-EJD-HRL

1

**TABLE OF CONTENTS**

2
**Page No.**

3
TABLE OF AUTHORITIES ..................................................................................... iii

4
I.    INTRODUCTION ........................................................................................ 1

5
II.   STATEMENT OF FACTS ........................................................................... 1

6
      A.    Plaintiffs and Their Counsel Thoroughly Investigated the Claims ...................... 3

7
      B.    The Terms of the Proposed Settlement ................................................................ 5

8
            1.    The Settlement Class ............................................................................... 5

9
            2.    The Settlement Relief ............................................................................. 5

10
            3.    The Notice Program ................................................................................ 7

11
III.  ARGUMENT AND AUTHORITY ............................................................. 8

12
      A.    The Settlement Approval Process ........................................................................ 8

13
      B.    The Criteria for Settlement Approval Are Satisfied ......................................... 10

14
            1.    The Settlement Agreement Is the Product of Serious, Informed,
                  and Non-Collusive Negotiations ........................................................... 10
15

16
            2.    The Settlement Provides Substantial Relief to the Settlement
                  Class and Treats All Settlement Class Members Fairly ........................ 11

17
            3.    The Settlement Agreement Is Fair and Reasonable in Light of
                  the Alleged Claims and Defenses ......................................................... 13
18

19
            4.    Continued Litigation Is Likely to Be Complex, Lengthy, and
                  Expensive ............................................................................................... 14

20
            5.    The Stage of the Proceedings and the Amount of Discovery
                  Completed Supports Preliminary Approval ........................................... 15
21

22
      C.    Plaintiffs' Requested Fees Are Reasonable ....................................................... 15

23
      D.    The Requested Incentive Awards Are Reasonable ............................................ 17

      E.    The Proposed Notice Program Is Constitutionally Sound ................................ 19
24

25
PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - i
CASE NO. 5:14-CV-03007-EJD-HRL

F.    Provisional Certification of the Class Is Appropriate ........................................ 20

      1.    The Rule 23(a) Factors Are Met ............................................................. 21

          a.    Numerosity .................................................................................... 21

          b.    Commonality ................................................................................. 21

          c.    Typicality ...................................................................................... 22

          d.    Adequacy ...................................................................................... 22

      2.    The Rule 23(b)(3) Factors Are Satisfied.................................................. 23

G.    Scheduling a Final Approval Hearing Is Appropriate ........................................ 24

IV.    CONCLUSION ............................................................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Page No.**

3

**FEDERAL CASES**

4

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.,*
    No. 15-CV-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) .................... 14, 21

5

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................................... 23, 24

6

*Booth v. Appstack, Inc.,*
    No. C13–1533JLR, 2015 WL 1466247 (W.D. Wash. March 30, 2015) ...................... 21

7

8

*Browning v. Yahoo! Inc.,*
    No. C04-01463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)................................... 12

9

*Celano v. Marriott Int'l, Inc.,*
    242 F.R.D. 544 (N.D. Cal. 2007)................................................................................. 21

10

11

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ........................................................................ 8

12

*Contreras v. Performance Food Grp., Inc.,*
    No. 4:14-CV-03380-PJH, 2016 WL 9138157 (N.D. Cal. May 4, 2016)....................... 18

13

14

*Dyer v. Wells Fargo Bank, N.A.,*
    303 F.R.D. 326 (N.D. Cal. 2014)................................................................................. 18

15

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ....................................................................... 22

16

17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ......................................... 10, 11, 13, 21, 22, 23

18

*Hanon v. Dataprods. Corp.,*
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 22

19

20

*Ikuseghan v. Multicare Health Sys.,*
    No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015).......................... 22

21

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ................................................................... 10, 16

22

23

24

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - iii
CASE NO. 5:14-CV-03007-EJD-HRL

25

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................ 10, 16, 18, 23

*Kristensen v. Credit Payment Servs.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) .............................................................................. 23

*Lee v. Stonebridge Life Ins. Co.*,
   289 F.R.D. 292 (N.D. Cal. 2013) ................................................................................... 14

*Mendez v. C-Two Grp., Inc.*,
   No. 13-CV-05914-HSG, 2015 WL 8477487 (N.D. Cal. Dec. 10, 2015) ...................... 21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................. 19, 20

*O'Brien v. Brain Research Labs, LLC*,
   No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ................................................. 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................................... 20

*Radcliffe v. Experian Info. Solutions*,
   715 F.3d 1157 (9th Cir. 2013) ................................................................................. 17, 18

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................. 10, 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................ 16

*True Health Chiropractic Inc. v. McKesson Corp.*,
   No. 13-CV-02219-HSG, 2016 WL 8925144 (N.D. Cal. Aug. 22, 2016) ...................... 14

*Van Patten v. Vertical Fitness Grp., LLC*,
   22 F. Supp. 3d 1069 (S.D. Cal. 2014) .......................................................................... 13

*Zakskorn v. Am. Honda Motor Co.*,
   No. 2:11-cv-02610-KJM-KJN, 2015 WL 3622990 (E.D. Cal. June 9, 2015) .......... 16, 17

## FEDERAL STATUTES

47 U.S.C. § 227(b)(1)(A) ...................................................................................................... 1

47 U.S.C. § 227(b)(3) .......................................................................................................... 12

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - iv
CASE NO. 5:14-CV-03007-EJD-HRL

1

2
# FEDERAL RULES

3
Fed. R. Civ. P. 23(a)(4) ........................................................................ 22

4
Fed. R. Civ. P. 23(e)(1) ........................................................................ 19

5

6
# OTHER AUTHORITIES

7
*Manual for Complex Litigation (Fourth)* § 21.312 (2014) ........................................... 19

8
*Manual for Complex Litigation (Fourth)* §§ 21.632–21.634 (2014) ............................................ 9

9
William B. Rubenstein, *Newberg on Class Actions* § 13.1 (5th ed. updated 2015) ................. 8, 9

10
William B. Rubenstein, *Newberg on Class Actions* § 13.13 (5th ed. updated 2015) ................... 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - v
CASE NO. 5:14-CV-03007-EJD-HRL

# I.  INTRODUCTION

Plaintiffs Alan Brinker, Austin Rugg, and Ana Sanders ("Plaintiffs"), and Defendants Normandin's d/b/a Normandin Chrysler Jeep Dodge Ram and OneCommand, Inc. ("Defendants"), have reached a proposed class action settlement in this Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA"), case. The settlement provides Settlement Class Members with the option of submitting a claim for either a cash payment of $40, or a certificate that is redeemable for goods or services valued at $90. The settlement calls for direct notice by U.S. mail to the 8,313 Settlement Class Members. If approved, the settlement would bring a sure end to what otherwise has been, and likely would continue to be, contentious and costly litigation centered on the unsettled factual and legal questions regarding Defendants' liability for the allegedly unlawful calls challenged in this action.

Plaintiffs respectfully request the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed class; (3) appoint Terrell Marshall Law Group PLLC as class counsel; (4) appoint Plaintiffs as class representatives; (5) approve the proposed notice plan; (6) appoint Kurtzman Carson Consultants ("KCC") to serve as claims administrator; and (7) schedule the final fairness hearing and related dates the parties have proposed.

# II.  STATEMENT OF FACTS

Normandin's owns and operates an automobile dealership in San Jose. OneCommand, an automotive marketing and advertising company, executed telephone campaigns on Normandin's behalf. Plaintiffs allege that Defendants made calls to their cell phones without their consent, and that the calls violated the TCPA, which prohibits calls made through the use of an automatic telephone dialing system or prerecorded voice to a cellular telephone number. *See* 47 U.S.C. § 227(b)(1)(A). On July 1, 2014, Plaintiff Alan Brinker filed a class action complaint, seeking to

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 1
CASE NO. 5:14-CV-03007-EJD-HRL

1    represent a nationwide class of consumers who received automated or prerecorded calls from

2    Normandin's. Mr. Brinker amended the complaint to add OneCommand as a party.

3         On April 20, 2016, the parties voluntarily participated in a full-day in-person settlement

4    conference with experienced JAMS mediator and former Chief Magistrate Judge of the Northern

5    District of California, Edward A. Infante. (Declaration of Beth E. Terrell in Support of Plaintiffs'

6    Motion for Preliminary Approval of Class Action Settlement ("Terrell Decl.") ¶ 2.) The parties

7    submitted detailed mediation briefs and, during the mediation session, discussed their relative

8    views of the law and the facts and potential relief for the proposed class. (*Id.*) Defendants

9    emphasized their position that proposed class members had consented to receive informational

10   calls by providing their telephone numbers to Normandin's, or consented to receive

11   telemarketing calls by providing written prior express consent in sales contracts or leases. (*Id.*)

12        The parties made significant progress toward resolution during their mediation with

13   Judge Infante, but the mediation did not result in an agreement. (Terrell Decl. ¶ 3.) Afterward,

14   the parties continued to work toward settlement, but also steadfastly litigated the case. (*Id.*) Just

15   weeks prior to mediation, Plaintiffs moved for class certification, and also to amend the

16   complaint to add Plaintiffs Austin Rugg and Ana Sanders and new TCPA claims based on calls

17   made to individuals on the National Do-Not-Call Registry. (*Id.*)

18        In addition, one month after mediation, the Supreme Court released its decision in

19   *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016), in which it held that a consumer could not satisfy

20   the injury-in-fact demands of Article III standing by alleging a bare procedural violation of the

21   Fair Credit Reporting Act. (Terrell Decl. ¶ 4.) In response, OneCommand moved to dismiss for

22   lack of Article III standing. (*Id.*) Plaintiffs opposed the motion. (*Id.*) During the four-month

23   period in which the motion was pending, the parties came very close to reaching a settlement.

24

25   PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
     AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
     PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 2
     CASE NO. 5:14-CV-03007-EJD-HRL

1   (*Id.*) Those negotiations came to a standstill when the Court granted OneCommand's motion.

2   (*Id.*) Following the Court's April 2017 order granting Plaintiffs' request for reconsideration, the

3   parties were able to reach agreement on all material terms. (*Id.*)

4          Defendants agreed they would settle only class claims that involved allegedly unlawful

5   calls placed to cell phones on or after October 16, 2013. (Terrell Decl. ¶ 5.) The revised claims

6   are set forth in the Third Amended Complaint, which the parties have filed contemporaneously,

7   and the parties request that the remaining class claims be dismissed without prejudice. (*Id.*)

8   Those Settlement Class Members who submit valid, timely claims will receive their choice of a

9   $90 certificate redeemable at Normandin's for the one-time purchase of goods and/or services, or

10  for cash in the amount of $40. (*Id.*) The remaining settlement details and proposed settlement

11  notices and a claim form are set forth in the parties' Settlement Agreement and Release. Terrell

12  Decl., Ex. 1 ("Settlement Agreement").

13  **A.    Plaintiffs and Their Counsel Thoroughly Investigated the Claims.**

14         Plaintiffs' counsel have extensive experience investigating, litigating, certifying, and

15  settling class action cases like this one. (*See generally* Terrell Decl. ¶¶ 6–20.) Plaintiffs' counsel

16  intensively investigated the factual and legal basis for the claims. (*Id.* ¶ 21.) Counsel propounded

17  written discovery requests designed to elicit information regarding Normandin's telemarketing

18  policies and practices, the scripts Normandin's used, and any electronic records that

19  Normandin's maintained documenting the calls. (*Id.*) Through these requests, counsel learned

20  that Normandin's retained a third-party vendor called OneCommand to place the calls and that

21  OneCommand maintained records relating to calls placed on Normandin's behalf. (*Id.*)

22         To obtain these crucial electronic call records, which identify the telephone number to

23  which the call was placed as well as the call date, counsel sent a subpoena to OneCommand.

24

25  PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
    AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
    PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 3
    CASE NO. 5:14-CV-03007-EJD-HRL

(Terrell Decl. ¶ 22.) OneCommand initially produced a list of approximately 5,800 cellular telephone numbers that received the same types of calls as those received by Plaintiff Brinker. (*Id.*) However, OneCommand did not produce information relating to these calls, including the number of calls placed to each telephone number, and the dates of the calls. (*Id.*) Rather than initiate an action to enforce the subpoena in Ohio, where OneCommand is based, Plaintiff Brinker successfully moved to add OneCommand as a Defendant. (*Id.*) Following Plaintiff Brinker's motion to compel, the Court ordered OneCommand to produce complete calling data, which it did identifying 8,313 cell phone numbers that were called by OneCommand on Normandin's behalf on or after October 16, 2013. (*Id.*)

Plaintiffs also reviewed approximately seventy-five thousand pages of documents produced by Normandin's and OneCommand; deposed three key individuals responsible for Normandin's operations, Normandin's Service Manager, General Sales Manager, and President; and deposed two key individuals responsible for OneCommand's operations, OneCommand's Chief Compliance Officer and Vice President of Information Technology. (Terrell Decl. ¶ 23.) Because Defendants blamed one another for the alleged failure to comply with the TCPA, Plaintiffs also engaged in third party discovery directed at understanding the contractual relationship between Defendants and any controlling or affiliated companies that could potentially bear responsibility for Plaintiffs' claims. (*Id.* ¶ 24.) Specifically, OneCommand asserted that Normandin's responsibility for the calls stemmed from the terms of an agreement between Normandin's and Chrysler Digital, while Normandin's argued that OneCommand was responsible based on its contractual relationship with Chrysler Digital's marketing agent, Shift Digital. (*Id.*) Plaintiffs sent subpoenas to both entities in an effort to clarify these assertions. (*Id.*) Plaintiffs also retained a call-data expert to evaluate OneCommand's data. (Terrell Decl. ¶ 25.)

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 4
CASE NO. 5:14-CV-03007-EJD-HRL

**B.     The Terms of the Proposed Settlement.**

The terms of the parties' proposed settlement are contained within the Settlement Agreement. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

1.     <u>The Settlement Class.</u>

The proposed Settlement Class is comprised of all persons who owned one or more of the 8,313 cellular telephone numbers to which calls were placed by OneCommand on Normandin's behalf on or after October 16, 2013, through the alleged use of any automatic telephone dialing system or with an artificial or prerecorded voice, which calls allegedly were not made for emergency purposes or with the recipient's prior express consent.  (Settlement Agreement § II.A.28.) The Settlement Class does not include the judge presiding over this action or his family members, any person who excludes him or herself from the Settlement Class, or persons to whom OneCommand placed calls on Normandin's behalf but whose numbers are not on the Settlement Class List. (*Id.*)

2.     <u>The Settlement Relief.</u>

The Settlement Agreement requires the Claims Administrator to mail a claim form to Settlement Class Members, (Settlement Agreement § III.F.1.), who may submit a claim for either a certificate in the amount of $90 for the one-time purchase of goods and/or services, or $40 cash (*Id.* § III.G.)

a.     *Plaintiffs' Service Award.*  If approved by the Court, Defendants will pay Mr. Brinker a service award of $10,000. (Settlement Agreement § III.I.) This award will compensate Mr. Brinker for his time and effort serving as a class representative, for the risks he undertook in prosecuting the case, and the substantial time he spent working with counsel, sitting for a deposition, responding to discovery requests, and attending mediation. (Terrell Decl. ¶ 31.) If

approved by the Court, Defendants will also pay Mr. Rugg and Ms. Sanders service awards of

$1,000 each for the risks they incurred in prosecuting the case. (Settlement Agreement § III.I.)

Defendants will make this payment separate and apart from the other relief for the Settlement

Class.

b.    *Attorneys' Fees and Litigation Expenses*. The Settlement Agreement provides that

in connection with obtaining preliminary and final approval of the Settlement Agreement,

Plaintiffs' counsel will request that the Court approve an award of $150,000 for attorneys' fees

and costs to compensate and reimburse them for all of the work already performed in this case

and all of the work remaining to be performed in connection with the settlement. (Settlement

Agreement § III.J.) The enforceability of the settlement is not contingent on Court approval of an

award of attorneys' fees and costs. (*Id.*) Defendants will pay any Court-awarded attorneys' fees

and expenses separate and apart from the relief to the Settlement Class.

c.    *Administration Costs*. The parties have retained experienced claims administrator

KCC to administer the settlement and process claims. KCC estimates it will cost approximately

$29,000 to $31,000 to issue notice, administer the settlement, process claims, and issue checks to

all members of the Settlement Class who file claims. (Terrell Decl. ¶ 26.)  Defendants will pay

KCC separate and apart from the relief to the Settlement Class.

d.    *Settlement Payments*. If this Court grants final approval of the settlement, and

after any applicable appellate period has expired, KCC will mail either a certificate in the amount

of $90, or a check in the amount of $40, to Settlement Class Members who timely submit claims,

depending on the option each Class Member chooses. (Settlement Agreement § III.G.) The

certificates, which may be used for a one-time purchase of goods and/or services, do not have an

expiration date. (*Id.* § III.G.1(g)).

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 6
CASE NO. 5:14-CV-03007-EJD-HRL

e. *Injunctive Relief.* The Settlement also provides Settlement Class Members with valuable injunctive relief. OneCommand agrees it will use the Interactive Marketing Solutions database and the Neustar database, which allow OneCommand to determine whether phone numbers provided to OneCommand by its customers are cell phone numbers or landlines. (Settlement Agreement § III.H.1.) OneCommand will also train and instruct its new and current employees regarding the TCPA's requirements at the time of new employment, and will provide updated training on a yearly basis. (*Id.*) Finally, OneCommand will not make telemarketing calls to consumers unless it first receives certification from the dealerships that they have obtained prior written consent from their customers. (*Id.*) Although Normandin's does not make prerecorded telemarketing calls, it has also agreed to train and instruct its employees regarding the requirements of the TCPA, and agrees it will not make prerecorded telemarketing calls without first obtaining signed disclosures from consumers, in compliance with 47 C.F.R. § 64.1200(f)(8). (*Id.* § III.H.2.)

f. *Release.* In exchange for the relief provided above, and upon the entry of a final order approving this Settlement, Defendants and each of their related affiliates and entities will be released from any claims described or alleged in the Third Amended Complaint. (*See* Settlement Agreement § III.O for full release language.)

3. The Notice Program.

In conjunction with preliminary approval, Plaintiffs respectfully ask the Court to approve a notice program in which KCC will administer the settlement by (1) sending notice of the settlement and a claim form to all members of the Settlement Class; (2) setting up and maintaining the settlement website through which Settlement Class Members may submit online claims; and (3) processing and tracking claims. (Settlement Agreement § III.F.) Defendants will

1  be responsible for preparing and serving timely Class Action Fairness Act notice within ten

2  calendar days after Plaintiffs file their motion for preliminary approval. (*Id.* § III.F.3.)

3       Once KCC completes the mailing of notices, Settlement Class Members will have sixty

4  days from the date of initial mailing to submit a claim for either a certificate in the amount of

5  $90, or cash in the amount of $40 (Settlement Agreement §§ III.G.) Settlement Class Members

6  will also have sixty days from the date of initial mailing to submit a written request to be

7  excluded from the Settlement Class. (*Id.* §§ II.A.20, III.K.) Finally, Settlement Class Members

8  will have sixty days from the date of initial mailing to object to the settlement. (*Id.* §§ II.A.20,

9  III.L.)

10       To receive a certificate or cash, Settlement Class Members need only tear the claim form

11  from the postcard notice, complete, and drop it in the mail. No postage is necessary.  (Terrell

12  Decl. ¶ 27.) Settlement Class Members also may submit claims electronically on the settlement

13  website. (Settlement Agreement § III.F.2.) If Settlement Class Members choose to redeem the

14  certificate for services, there is no expiration date. (*Id.* § II.A.3.)

15  ### III.  ARGUMENT AND AUTHORITY

16  **A.  The Settlement Approval Process.**

17       As a matter of "express public policy," federal courts strongly favor and encourage

18  settlements, particularly in class actions and other complex matters, where the inherent costs,

19  delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

20  class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

21  1992) (noting the "strong judicial policy that favors settlements, particularly where complex

22  class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions*

23  ("Newberg") § 13.1 (5th ed. updated 2015) (citing cases). Here, the proposed settlement is the

1   best vehicle for Settlement Class Members to receive the relief to which they may be entitled in a

2   prompt and efficient manner.

3        The Manual for Complex Litigation describes a three-step procedure for approval of class

4   action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of

5   notice of the settlement to all affected class members; and (3) a "fairness hearing" or "final

6   approval hearing," at which class members may be heard regarding the settlement, and at which

7   evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement

8   may be presented. *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632–21.634, at

9   432–34 (2014). This procedure safeguards class members' due process rights and enables the

10   court to fulfill its role as the guardian of class interests. *See* Newberg § 13.1.

11        With this motion, Plaintiffs request that the Court take the first step in the settlement

12   approval process by granting preliminary approval of the proposed Settlement Agreement. The

13   purpose of preliminary evaluation of proposed class action settlements is to determine whether

14   the settlement "is within the range of possible approval" and thus whether notice to the class of

15   the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. Newberg

16   § 13.13. The decision to approve or reject a proposed settlement is committed to the Court's

17   sound discretion. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement,

18   appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the

19   parties to the agreement," and will reverse only upon strong showing of abuse of discretion)

20   (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

21        The Court's grant of preliminary approval will allow the Settlement Class to receive

22   direct notice of the proposed Settlement Agreement's terms and the date and time of the Final

23   Approval Hearing, at which time Settlement Class Members may be heard regarding the

24

25   PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 9
CASE NO. 5:14-CV-03007-EJD-HRL

1   Settlement Agreement, and at which time further evidence and argument concerning the

2   settlement's fairness, adequacy, and reasonableness may be presented. *See* MCL 4th § 21.634.

3   **B.    The Criteria for Settlement Approval Are Satisfied.**

4       The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-

5   collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

6   2009). "To assess a settlement proposal, courts must balance the strength of the plaintiffs' case;

7   the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining

8   class action status throughout the trial; the amount offered in settlement; the extent of discovery

9   completed and the state of the proceedings; the experience and views of counsel; the presence of

10  a governmental participant; and the reaction of the class members to the proposed settlement. *In

11  re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015).

12      Even at this preliminary stage, an analysis of these factors favors settlement approval.

13      1.      The Settlement Agreement Resulted from Informed, Non-Collusive Negotiations.

14      The Court's role is to ensure that "the agreement is not the product of fraud or

15  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

16  whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d

17  1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*,

18  779 F.3d at 944 (noting settlements in class actions "present unique due process concerns for

19  absent class members," including the risk that class counsel "may collude with the defendants")

20  (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2010)).

21      The Settlement Agreement is the result of intensive, arm's-length negotiations between

22  experienced attorneys for both parties who are highly familiar with class action litigation in

23  general and with the legal and factual issues of this case in particular. (Terrell Decl. ¶¶ 6–20.)

24

25  PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
    AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
    PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 10
    CASE NO. 5:14-CV-03007-EJD-HRL

Plaintiffs' counsel are particularly experienced in the litigation, certification, trial, and settlement of TCPA cases similar to this case. (*See generally id.*) The Settlement Agreement was the result of nearly a year of negotiations that followed a full-day in-person settlement conference with Judge Infante. (*Id.* ¶¶ 2-5) Both before and following mediation, counsel spent a considerable amount of time engaging in written discovery, depositions, document review, data analysis, analyzing legal issues related to the lawsuit's claims, and briefing class certification and a motion to dismiss. *See Hanlon*, 150 F.3d at 1027 (no basis to disturb the settlement, in the absence of any evidence suggesting that the settlement was negotiated in haste or in the absence of information). Plaintiffs and their counsel support the settlement as fair, reasonable, adequate and in the best interests of the Settlement Class. (Terrell Decl. ¶ 28.) This factor favors approval.

2.     <u>The Settlement Provides Substantial Relief to the Settlement Class and Treats All Settlement Class Members Fairly.</u>

The Settlement Agreement requires Defendants to provide a certificate or cash to each Settlement Class Member who completes and returns a timely claim form. (Settlement Agreement § III.G.) If a Settlement Class Member submits a claim for a certificate, he or she will receive a certificate in the amount of $90 for the one-time purchase of goods and/or services at Normandin's. (*Id.* § III.G.1.) If a Settlement Class Member elects to receive a cash award, he or she will receive $40 in cash (*Id.* § III.G.2.) A Settlement Class Member need only remove and return the claim form, which is already addressed to the claims administrator and is postage paid so the Settlement Class Member does not need to pay any postage. The Settlement Class Member also may submit a claim for a certificate or cash by visiting the settlement website and filling out a simple form. (*Id.* § III.F.2.)

Courts (including this Court) have approved similarly-structured class action settlements. *See Williamson v. McAfee, Inc.*, Nos. 5:14-cv-00158-EJD; 5:14-cv-02475-EJD, Dkt. Nos. 114,

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 11
CASE NO. 5:14-CV-03007-EJD-HRL

77 (N.D. Cal. Feb. 3, 2017) (Davila, J.) (approving settlement that provided members of one class option of a certificate or cash for $11.50, and second class injunctive relief only); *Taylor v. Universal Auto Grp. I, Inc.,* No. 3:13-cv-05245-KLS, Dkt. No. 105 (W.D. Wash. Feb. 3, 2016) (approving settlement in TCPA case involving allegedly unlawful calls to cell phones that provided class members with $70 certificates or $35 in cash); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, No. 3:11-MD-02261-JM-JMA, Dkt. No. 97 (S.D. Cal. Feb. 20, 2013) (approving settlement in TCPA case involving allegedly unlawful text messages that provided class members with certificates with a cash value of $12.97 and a services value of $17.29); *Kazemi v. Payless Shoe Source, Inc.*, Case No. CV-09-5142 EMC, Dkt. No. 94 (N.D. Cal. Apr. 2, 2012) (approving settlement that provided class members with a certificate for up to $25.00, redeemable at the defendant's store with no cash payment alternative); *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, Dkt. No. 34 (D.N.J. Aug. 9, 2012) (approving settlement providing class members with the choice between a voucher for fifty percent off any of five identified Brain Research products, each of which had a suggested retail price of between $19.95 and $59.95 per unit, or a $20 cash payment); *Browning v. Yahoo! Inc.*, No. C04-01463, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007) (approving settlement that provided class members with either a free Experian credit score (a retail value of $5) or two months of free credit monitoring (a retail value of $9.95 per month).

Plaintiffs' counsel acknowledge that the monetary relief does not constitute the full measure of statutory damages potentially available to Settlement Class Members, who theoretically could recover $500, or up to $1,500, in statutory damages for each violation of the TCPA if they were to prevail in litigation. *See* 47 U.S.C. § 227(b)(3)(B) (permitting $500 in statutory damages for each violation of the TCPA); 47 U.S.C. § 227(b)(3)(C) (permitting $1,500

for "willful" TCPA violations). This fact alone, however, should not weigh against preliminary approval. *See Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

The settlement also treats all Settlement Class Members equally and fairly. Every Settlement Class Member will have the same option of submitting a claim for a certificate or for cash. Settlement Class Members can fill out a claim online and submit it electronically, or tear off the claim form, sign it, and drop it in the mail. No postage is necessary.

3.    The Settlement Agreement Is Fair and Reasonable in Light of the Alleged Claims and Defenses.

Entering into mediation, Plaintiffs and their counsel were confident in the strength of their case, but also pragmatic in their awareness of the risks inherent to litigation and the various defenses available to Defendants. The reality is that Settlement Class Members could have ended up recovering only a fraction of the settlement benefits or losing the case at or before trial.

The primary risk that Plaintiffs faced was that they could lose on the merits. Defendants maintain that many of the prerecorded messages sent to consumers were made for informational, rather than telemarketing purposes. Because these messages were sent to individuals who had previously provided their cell phone numbers to Normandin's, Defendants argue that they had consent to make the calls. Moreover, to the extent that the prerecorded messages could be characterized as telemarketing calls, Normandin's insists that many of the consumers provided prior written consent to receive such messages when they signed sales contracts or lease agreements. (Dkt. No. 113 at 16.) Plaintiffs dispute that Defendants could establish consent, which is an affirmative defense for which they carry the burden. *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017)

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 13
CASE NO. 5:14-CV-03007-EJD-HRL

1    (whether a TCPA plaintiff actually gave express prior consent is an affirmative defense to be

2    raised and proven by a defendant.). But if the Court agreed with Defendants that many class

3    members provided consent, Plaintiffs risked losing on the merits at summary judgment or trial.

4          Another risk Plaintiffs faced going forward is that the Court would decline to certify this

5    case as a class action. Courts have either granted or denied certification in TCPA cases

6    depending upon the facts of the case. *Compare Abante Rooter & Plumbing, Inc. v. Alarm.com*

7    *Inc.,* No. 15-CV-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) (certifying three TCPA

8    classes)*, and Lee v. Stonebridge Life Ins. Co.,* 289 F.R.D. 292, 295 (N.D. Cal. 2013) (certifying

9    TCPA class), *with True Health Chiropractic Inc. v. McKesson Corp.,* No. 13-CV-02219-HSG,

10   2016 WL 8925144 (N.D. Cal. Aug. 22, 2016) (denying class certification of TCPA class).

11   Defendants have denied that class certification is appropriate in this case. If the Court refused to

12   certify the case as a class action, only the named Plaintiffs would be able to pursue their claims.

13         Finally, there is a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any

14   judgment could be reversed on appeal or delayed many years. By contrast, the settlement

15   provides substantial relief to Settlement Class Members without delay and is within the range of

16   reasonableness, particularly in light of the risks the Settlement Class would face in litigation.

17         4.    Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive.

18         Litigation would be lengthy and expensive if this action were to proceed. Although the

19   parties had completed substantial discovery at the time they reached agreement, expert work,

20   expert depositions, and extensive motion work, including Plaintiffs' second motion for class

21   certification, remains. (Terrell Decl. ¶ 29.) It could be at least a year before the case would

22   proceed to trial. The settlement avoids these risks and provides immediate and certain relief.

23

24

25   PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
     AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
     PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 14
     CASE NO. 5:14-CV-03007-EJD-HRL

1

2

     5.    <u>The Stage of the Proceedings and the Amount of Discovery Completed Supports</u>
<u>Preliminary Approval.</u>

3

     Plaintiffs' counsel have thoroughly analyzed the factual and legal issues involved in this

4

case. (Terrell Decl. ¶ 21.) Plaintiffs' counsel propounded and responded to written discovery and

5

diligently reviewed the information that Defendants produced. (*Id.*) Plaintiffs' counsel deposed

6

key personnel of both Normandin's and OneCommand, and through these depositions learned

7

essential information about Defendants' telemarketing practices. (*Id.* ¶ 23.) Counsel also

8

conducted third-party discovery to obtain additional information regarding the contractual

9

relationship between Defendants and any controlling or affiliated companies that could

10

potentially bear responsibility for Plaintiffs' claims. (*Id.* ¶ 24.) Counsel also briefed a class

11

certification motion, a process that clarified the evidence and crystalized the claims and defenses.

12

(*Id.* ¶ 3.) Finally, Plaintiffs' responded to Defendants' motion to dismiss, and after the Court

13

granted Defendants' motion, successfully moved for reconsideration. (*Id.* ¶ 4.)

     Plaintiffs' counsel were well-informed about the strengths and weaknesses of their case at

14

the time they entered in their agreement. Thus, this factor favors settlement.

15

**C.    Plaintiffs' Requested Fees Are Reasonable.**

16

     Plaintiffs' counsel seek an award of $150,000 to compensate them for reasonable fees

17

and out-of-pocket costs they have incurred prosecuting this action. Plaintiffs' fee request, which

18

was negotiated only after the substantive terms of the Settlement Agreement were agreed upon,

19

is substantially less than the approximately $700,000 in fees and costs that Plaintiffs' counsel

20

have expended on this case to date. (Terrell Decl. ¶ 30.)

21

     The Ninth Circuit has approved two methods for calculating attorneys' fees depending on

22

the circumstances:  the lodestar method and the percentage-of-recovery method. Under the

23

lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the

24

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 15

25

CASE NO. 5:14-CV-03007-EJD-HRL

1    hours they reasonably expended on the litigation by their reasonable hourly rates. *Staton v.*

2    *Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). "Under the percentage-of-recovery method, the

3    attorneys' fees equal some percentage of the common settlement fund; in this circuit, the

4    benchmark percentage is 25%." *In re Online DVD*, 779 F.3d at 949. Regardless of the method,

5    "courts have an independent obligation to ensure that the award, like the settlement itself, is

6    reasonable." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

7             Here, the settlement does not create a "common fund" to be divided equally amongst the

8    class members and thus the lodestar method is most appropriate. *See Zakskorn v. Am. Honda*

9    *Motor Co.*, No. 2:11-cv-02610-KJM-KJN, 2015 WL 3622990, at *16 (E.D. Cal. June 9, 2015)

10   (approving fees based on lodestar method where the settlement did not establish a common fund

11   and the value of the settlement was uncertain). Plaintiffs' counsel have devoted over 1,000 hours

12   to this litigation, which was filed three years ago. At their hourly rates, they have incurred

13   approximately $660,000 in fees. Plaintiffs' counsel also have incurred approximately $40,000 in

14   out-of-pocket costs. (Terrell Decl. ¶ 30.) Plaintiffs' counsel's requested fee is less than 25% of

15   this amount. Thus, the requested $150,000 is reasonable.

16            As a crosscheck, the percentage-of-recovery method also supports Plaintiffs' requested

17   fee because the requested fee represents a reasonable percentage of the settlement's estimated

18   total value. Depending on whether Settlement Class Members submit claims for certificates or

19   cash, the settlement's value ranges from $523,520 to $939,170.[1] Plaintiffs request an award of

20   $150,000, approximately $40,000 of which will be used to reimburse Plaintiffs' counsel for the

21   out-of-pocket costs incurred prosecuting this litigation. The remaining $110,000 fee amounts to

22

23   ---
     [1] $523,520 = Cash Value ($332,520) + Fees and Costs ($150,000) + Service Awards ($12,000) +
     Notice Expenses ($29,000); $939,170 = Cash Value Certificates ($748,170) + Fees and Costs
     ($150,000) + Service Award ($12,000) + Notice Expenses ($29,000).

24   PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
     AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
25   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 16
     CASE NO. 5:14-CV-03007-EJD-HRL

between 11.7% and 21% of the total settlement value.[2] This range is reasonable and has been approved by courts in this circuit especially when performing a "crosscheck" on the lodestar method. *See, e.g., Zakskorn*, 2015 WL 3622990 at *15 (citing *Khanna v. Intercon Sec. Sys., Inc.*, 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014)) (noting the benchmark in the Ninth Circuit is 25% but that courts have approved fee awards as high as 33% of the fund).

Plaintiffs' Counsel achieved an excellent result for the Settlement Class. Settlement Class Members will have the option to submit a claim for a certificate with a goods or services value of $90, or for cash in the amount of $40. Plaintiffs' counsel were confident in their ability to succeed at class certification and at trial. Nevertheless, success was by no means guaranteed, especially considering Defendants' vigorous opposition, the strength of their consent defense, and the complexity of the issues involved. Because Plaintiffs' counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced substantial risk if they proceeded to trial.

Before final approval, Plaintiffs' counsel will file a motion for an award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request.

**D.     The Requested Incentive Awards Are Reasonable.**

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Incentive awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the settlement by

---

[2] $110,000 = 21% of $523,520 and 11.7% of $939,170.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 17
CASE NO. 5:14-CV-03007-EJD-HRL

1    undermining the adequacy of the class representatives and class counsel"). For example, if a

2    settlement explicitly conditions an incentive award on the class representative's support for the

3    settlement, the incentive award is improper. *See id.* By contrast, where a settlement "provide[s]

4    no guarantee that the class representatives would receive incentive payments, leaving that

5    decision to later discretion of the district court," an incentive award may be appropriate. *In re*

6    *Online DVD*, 779 F.3d at 943 (approving $5,000 incentive award to class representatives and

7    distinguishing *Radcliffe*).

8           Here, Plaintiffs request an incentive award (called a "service award" in the Settlement

9    Agreement) of $10,000 for Mr. Brinker, and incentive awards of $1,000 each for Mr. Rugg and

10   Ms. Sanders, or amounts the Court deems appropriate. (*See* Settlement Agreement § III.I.)

11   Plaintiffs' support of the settlement is independent of any service awards and not conditioned on

12   the Court awarding any particular amount or any award at all, in stark contrast to *Radcliffe*.

13   (Terrell Decl. ¶ 31.) Thus, Plaintiffs' adequacy as class representatives is unaffected by

14   appropriate service awards that recognize their efforts and contributions to the case. Service

15   awards of $10,000 and $1,000, respectively, are reasonable under the circumstances and well in

16   line with awards approved by federal courts in this district. *See Contreras v. Performance Food*

17   *Grp., Inc.*, No. 4:14-CV-03380-PJH, 2016 WL 9138157, at *1 (N.D. Cal. May 4, 2016)

18   (approving service award "in the amount of $10,000.00, for the initiation of this action, the

19   substantial benefit conferred upon the Class, and the risks taken by stepping forward and

20   prosecuting this action."); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal.

21   2014) (approving $10,000 service award where class representative consulted with counsel,

22   attended mediation, contributed significant personal time, and award was paid directly by the

23   defendant such that "class members will not fund the awards.").

24   PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
     AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
25   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 18
     CASE NO. 5:14-CV-03007-EJD-HRL

1

**E.      The Proposed Notice Program Is Constitutionally Sound.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 19
CASE NO. 5:14-CV-03007-EJD-HRL

The proposed forms of notice, attached as Exhibits B and C to the Settlement Agreement ("Notices"), satisfy all of the above criteria. The Notices are clear, straightforward, and provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Agreement provides for direct notice via U.S. Mail to members of the Settlement Class, and, if necessary, the Claims Administrator will supplement direct notice with a targeted internet banner campaign. (Settlement Agreement §§ III.F.) This Notice Program satisfies due process especially because Rule 23 does not require that each potential class member receive actual notice of the class action. *Mullane*, 339 U.S. at 316 (explaining that the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning").

All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

**F.      Provisional Certification of the Class Is Appropriate.**

For settlement purposes only, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class defined as:

> All persons who owned one or more of the 8,313 cellular telephone numbers to which calls were placed by OneCommand on Normandin's behalf on or after October 16, 2013, through the alleged use of any automatic telephone dialing system or with an artificial or prerecorded voice, which calls allegedly were not made for emergency purposes or with the recipient's prior express

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 20
CASE NO. 5:14-CV-03007-EJD-HRL

consent. Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family.

(*See* Settlement Agreement § I.A.28.) As detailed below, the Settlement Class satisfies all of the applicable certification requirements.

       1.    <u>The Rule 23(a) Factors Are Met.</u>

       a.    *Numerosity*.

    "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). While numerosity is not dependent on a specific number of proposed class members, courts generally find that it is satisfied when the class contains at least forty members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). Here, the Settlement Class consists of 8,313 persons, rendering joinder impracticable.

       b.    *Commonality*.

    The commonality requirement of Rule 23(a)(2) is satisfied because there are many questions of law and fact common to the Settlement Class that focus on Defendants' common practice of using an automated dialing system or prerecorded messages to call persons in the settlement on their cell phones. *See Abante Rooter and Plumbing, Inc.*, 2017 WL 1806583 at *6 (finding class members' claims hinged on several common questions, including whether agents used a prerecorded message); *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487, at *4 (N.D. Cal. Dec. 10, 2015) (finding resolution of question of whether automatic dialing system was used is sufficient to show commonality as it drives disposition of the case); *Booth v. Appstack, Inc.*, No. C13–1533JLR, 2015 WL 1466247, at *8 (W.D. Wash. March 30, 2015) (finding TCPA claim raised common issues because the defendant used "the same predictive dialer to robocall and play the same recorded message to various cell phone

1   numbers"); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *6

2   (W.D. Wash. July 29, 2015) (finding commonality satisfied where TCPA claims were predicated

3   on the use of an automated dialing system to make calls on behalf of defendant). Here, common

4   issues of fact and law include: (1) whether OneCommand used an automated telephone dialing

5   system to call potential consumers' cell phones; (2) whether Normandin's obtained valid prior

6   express consent from consumers; and (3) whether Normandin's is vicariously liable for calls

7   placed by OneCommand. Because persons in the Settlement Class all suffered the same injury

8   and are generally subject to the same defenses, commonality is satisfied.

9                    c.    *Typicality*.

10      "[R]epresentative claims are typical if they are reasonably co-extensive with those of

11  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

12  "Typicality refers to the nature of the claim or defense of the class representative, and not to the

13  specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp.*, 976 F.2d

14  497, 508 (9th Cir. 1992). Here, Plaintiffs' claims are based on Defendants' systematic use of

15  automated calls to cell phones. Because Plaintiffs' claims arise from the same course of conduct,

16  typicality is satisfied.

17                   d.    *Adequacy*.

18      Adequacy requires the representative of a class to provide fair and adequate

19  representation of the class. Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will

20  adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and

21  their counsel have any conflicts of interest with other class members and (2) will the named

22  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v.*

23  *Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

24

25  PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
    AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
    PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 22
    CASE NO. 5:14-CV-03007-EJD-HRL

1    In the context of a class settlement, examination of potential conflicts of interest "is especially

2    critical." *In re Online DVD*, 779 F.3d at 942 (internal marks and quotation omitted). That said,

3    courts will not deny class certification on the basis of "speculative" or "trivial" conflicts. *See id.*

4    (finding settlement class representatives adequate and overruling objection that proposed $5,000

5    incentive award created a conflict of interest).

6         Plaintiffs have no interests that are antagonistic to or in conflict with persons in the

7    Settlement Class they seek to represent and have a substantial interest in the outcome of this

8    action, because they received the same allegedly unlawful calls that persons in the Settlement

9    Class received. Class Counsel are active practitioners with substantial experience in consumer

10   law and class action litigation, including cases very similar to this one. (*See* Terrell Decl. ¶¶ 6–

11   20.) The requirements of Rule 23(a) are satisfied.

12        2.      The Rule 23(b)(3) Factors Are Satisfied.

13        Rule 23(b)(3)'s predominance requirement tests whether proposed classes are

14   "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022

15   (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance inquiry

16   measures the relative weight of the common questions. *Amchem*, 521 U.S. at 624. Common

17   issues predominate here because the central liability question in this case—whether Defendants

18   placed autodialed calls to consumers' cellular telephones without their consent—can be

19   established through generalized evidence. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp.

20   3d 1292, 1307 (D. Nev. 2014) (finding common issues predominated where the defendants

21   presented no evidence of express consent).

22        Because the claims are being certified for purposes of settlement, there are no issues with

23   manageability. *Amchem*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-

24

1   only certification, a district court need not inquire whether the case, if tried, would present

2   intractable management problems … for the proposal is that there be no trial."). Additionally,

3   resolution of thousands of claims in one action is far superior to individual lawsuits and

4   promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the

5   very core of the class action mechanism is to overcome the problem that small recoveries do not

6   provide the incentive for any individual to bring a solo action prosecuting his or her rights").

7   Certification for purposes of settlement is appropriate.

8   **G.   Scheduling a Final Approval Hearing Is Appropriate.**

9           The last step in the settlement approval process is a final approval hearing at which the

10   Court may hear all evidence and argument necessary to make its settlement evaluation.

11   Proponents of the settlement may explain the terms and conditions of the Settlement Agreement,

12   and offer argument in support of final approval. The Court will determine after the final approval

13   hearing whether the settlement should be approved, and whether to enter a final order and

14   judgment under Rule 23(e). Plaintiffs request that the Court set a date for a hearing on final

15   approval at the Court's convenience, but no earlier than 120 days after entry of an order

16   preliminarily approving the settlement and 30 days after the objection/exclusion deadline, and

17   schedule further settlement proceedings pursuant to the schedule set forth below:

18
19

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 30 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | Within 30 days following Notice Deadline |
| Exclusion/Objection Deadline | 60 days after Notice Deadline |

20
21
22
23
24
25

| ACTION | DATE |
|---|---|
| Deadline to Submit Claims | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 15 days prior to the Final Approval Hearing |
| Final Approval Hearing / Noting Date | No earlier than 30 days following the Exclusion/Objection Deadline |
| Final Approval Order Entered | At the Court's Discretion |

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) grant preliminary approval of the settlement, including the fees and costs payments to Plaintiffs' Counsel; (2) provisionally certify the proposed class; (3) appoint as Class Counsel the law firm of Terrell Marshall Law Group PLLC; (4) appoint Plaintiffs as class representatives; (5) approve the proposed notice plan; (6) appoint KCC to serve as the Claims Administrator; and (7) schedule the final fairness hearing at the Court's convenience but no earlier than 120 days following entry of the Preliminary Approval Order and 30 days after the Exclusion/Objections deadline.

RESPECTFULLY SUBMITTED AND DATED this 5th day of October, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:   /s/ Beth E. Terrell, CSB#178181
Beth E. Terrell, CSB #178181
Email:  bterrell@terrellmarshall.com
Mary B. Reiten, CSB #203412
Email:  mreiten@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

1

2          Steven M. Tindall, CSB #187862
           Email:  smt@classlawgroup.com
3          GIBBS LAW GROUP LLP
           505 14th Street, Suite 1110
4          Oakland, California 94612-1406
           Telephone: (510) 350-9700
5          Facsimile: (510) 350-9701

6          Rob Williamson, *Admitted Pro Hac Vice*
           Email:  roblin@williamslaw.com
7          Kim Williams, *Admitted Pro Hac Vice*
           Email:  kwilliams@williamslaw.com
8          WILLIAMSON & WILLIAMS
           2239 West Viewmont Way, West
9          Seattle, Washington 98199
           Telephone: (206) 295-3085
10
                   *Attorneys for Plaintiffs and the Proposed Class*
11

12

13

14

15

16

17

18

19

20

21

22

23

24
PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
25   AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
     PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 26
     CASE NO. 5:14-CV-03007-EJD-HRL

1

<u>CERTIFICATE OF SERVICE</u>

2

I, Beth E. Terrell, hereby certify that on October 5, 2017, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

Andrew V. Stearns, SBN #164849
Email:  astearns@boglawyers.com

6

Robert B. Robards, SBN #166855
Email:  rrobards@boglawyers.com

7

ROBARDS & STEARNS
718 University Avenue, Suite 216

8

Los Gatos, California 95032
Telephone: (408) 214-6432

9

Facsimile: (408) 560-9592

10

*Attorneys for Defendant Normandin's*

11

Sean P. Flynn, SBN #220184
Email:  sflynn@gordonrees.com

12

GORDON & REES LLP
2211 Michelson Drive, Suite 400

13

Irvine, California 92612
Telephone: (949) 255-6950

14

Facsimile: (949) 255-2060

15

Daniel S. Kubasak, SBN #222336
Email: dkubasak@gordonrees.com

16

GORDON & REES LLP
275 Battery Street, Suite 2000

17

San Francisco, California 94111
Telephone: (415) 986-5900

18

Facsimile: (415) 986-8054

19

20

21

22

23

24

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR

25

PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 27
CASE NO. 5:14-CV-03007-EJD-HRL

1
    Steven C. Coffaro, *Admitted Pro Hac Vice*
    Email:  scoffaro@kmklaw.com

2
    Drew Hicks, *Admitted Pro Hac Vice*
    Email: dhicks@kmklaw.com

3
    KMK LAW
    One East Fourth Street, Suite 1400

4
    Cincinnati Ohio 45202
    Telephone: (513) 579-6400

5
    Facsimile: (513) 579-6457

6
    *Attorneys for Cross Defendant OneCommand, Inc.*

7
DATED this 5th day of October, 2017.

8
               TERRELL MARSHALL LAW GROUP PLLC

9

              By:   /s/ Beth E. Terrell, CSB #178181
10
                    Beth E. Terrell, CSB #178181
                    Email: bterrell@terrellmarshall.com

11
                    936 North 34th Street, Suite 300
                    Seattle, Washington 98103

12
                    Telephone: (206) 816-6603
                    Facsimile: (206) 319-5450

13

            *Attorneys for Plaintiffs and the Proposed Class*
14

15

16

17

18

19

20

21

22

23

24
PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
25
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 28
CASE NO. 5:14-CV-03007-EJD-HRL