1   Beth E. Terrell, CSB #178181
    Email:  bterrell@terrellmarshall.com
2   Mary B. Reiten, CSB #203412
    Email:  mreiten@terrellmarshall.com
3   Adrienne D. McEntee, Admitted Pro Hac Vice
    Email:  amcentee@terrellmarshall.com
4   TERRELL MARSHALL LAW GROUP PLLC
    936 North 34th Street, Suite 300
5   Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
6   Facsimile: (206) 319-5450

7   [Additional Counsel Appear on Signature Page]

8   *Attorneys for Plaintiffs and the Proposed Class*

9
                    UNITED STATES DISTRICT COURT
10           FOR THE NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION
11
    ALAN BRINKER, AUSTIN RUGG, and
12  ANA SANDERS, individually and on behalf        NO.  5:14-cv-03007-EJD-HRL
    of all others similarly situated,
13                                                 **PLAINTIFFS' NOTICE OF MOTION
                   Plaintiffs,                     AND MEMORANDUM OF POINTS AND
14                                                 AUTHORITIES IN SUPPORT OF
          v.                                       PLAINTIFFS' MOTION FOR FINAL
15                                                 APPROVAL OF CLASS ACTION
    NORMANDIN'S, a California corporation,         SETTLEMENT**
16  d/b/a NORMANDIN CHRYSLER JEEP
    DODGE RAM, and ONECOMMAND, INC.,               JURY TRIAL DEMAND
17
                   Defendants.                     HON. EDWARD J. DAVILA
18
                                                   Complaint Filed:  July 1, 2014
19
                                                   DATE:      March 29, 2018
20                                                 TIME:      10:00 a.m.
                                                   LOCATION:  Courtroom 4 – 5th Floor
21
    TO:    DEFENDANTS NORMANDIN'S, a California corporation, d/b/a NORMANDIN
22         CHRYSLER JEEP DODGE RAM, and ONECOMMAND, INC., AND THEIR
           ATTORNEYS OF RECORD:
23

24
    PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
25  AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
    APPROVAL OF CLASS ACTION SETTLEMENT
    CASE NO. 5:14-CV-03007-EJD-HRL

1    PLEASE TAKE NOTICE that on March 29, 2018, at 10:00 a.m., in Courtroom 4, 5th

2    Floor, of the U.S. District Court for the Northern District of California, 280 South 1st Street, San

3    Jose, California, 95113, Plaintiffs will move for preliminary approval of a class action

4    settlement.

5    This motion will be based on: this Notice of Motion, the following Memorandum of

6    Points and Authorities, Declaration of Justin Brown; the records and file in this action; and on

7    such other matter as may be presented before or at the hearing of the motion.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:14-CV-03007-EJD-HRL

1

# TABLE OF CONTENTS

2

**Page No.**

3    TABLE OF AUTHORITIES ...................................................................................................... ii

4    I.     INTRODUCTION ........................................................................................... 1

5    II.    STATEMENT OF FACTS ............................................................................. 2

6    III.   ARGUMENT AND AUTHORITY ................................................................ 4

7         A.     The Settlement satisfies the criteria for final approval ........................................ 4

8               1.     The strength of Plaintiffs' case ................................................. 5

9               2.     The risk, expense, complexity, and likely duration of further litigation... 5

10             3.     The risk of maintaining class action status ................................ 6

11             4.     The amount offered in Settlement............................................... 7

12             5.     The extent of discovery completed and the stage of the proceedings....... 9

13             6.     The experience and views of counsel ..................................... 10

14             7.     The presence of a governmental participant ........................... 10

15             8.     The reaction of Settlement Class members............................. 11

16         B.     The Settlement is the result of informed, arm's-length negotiations................. 11

17         C.     The notice program is constitutionally sound.................................................... 13

18         D.     The Settlement Class should be finally certified ............................................... 14

19         E.     Counsel's request for fees, costs, and service awards should be granted ........... 15

20    IV.   CONCLUSION........................................................................................... 15

21

22

23

24

25

**TABLE OF AUTHORITIES**

**Page**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ...................... 8

*Agne v. Papa John's Intern., In*c.,
286 F.R.D. 559 (W.D. Wash. 2012) ................................................................................ 6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 7

*Arthur v. Sallie Mae, Inc.*,
No. 10-cv-00198-JLR (W.D. Wash. 2012) ..................................................................... 13

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................... 12, 13

*Cubbage v. Talbots, Inc.*,
No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) ................................. 8

*Davenport v. Discover Financial Services, et al.*,
No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) ...................................................... 13

*Estrada v. iYogi, Inc.*,
No. CV21301989WBSCKD, 2016 WL 310279 (E.D. Cal. Jan. 26, 2016) ..................... 8

*Fulford v. Logitech, Inc.*,
No. C-08-2041-MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010) ............................... 6

*Garner v. State Farm Auto Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. April 22, 2010).............. 10

*Garret, et al. v. Sharps Compliance, Inc.*,
Case No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) ..................................... 8

*Global Educ. Servs., Inc. v. Intuit, Inc.*,
No. C09-944 RSL, Dkt. No. 91 (W.D. Wash. 2012) ..................................................... 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988) ................................................................................... 4, 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2010) ................................................................................... 11, 12

*In re Hyundai and Kia Fuel Economy Litig.*,
   --- F.3d ---, 2018 WL 505343 (9th Cir. Jan. 23, 2018)........................................ 7, 14, 15

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................... 12

*In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"),
   779 F.3d 934 (9th Cir. 2015) ...................................................................... 5, 11

*Ikuseghan v. MultiCare Health Sys.*,
   No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015)............................ 6

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................... 10

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)........................................................................ 8

*Linney v. Cellular Alaska Partnership*,
   1997 WL 450064 (N.D. Cal. July 18, 1997)................................................... 10

*Lofton v. Verizon Wireless (VAW) LLC*,
   No. C 13-05665 YGR, 2016 WL 7985254 (N.D. Cal. May 27, 2016).......................... 13

*McClintic v. Lithia Motors, Inc.*,
   No. C11859 RAJ, Dkt. No. 50 (W.D. Wash. Oct. 23, 2012)......................................... 13

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................... 5

*Perkins v. LinkedIn Corp.*,
   No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. 2016)....................................... 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................... 11

*Rose v. Bank of Am. Corp.*,
   No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)................ 8, 13

*Van Patten v. Vertical Fitness Grp., LLC*,
   22 F. Supp. 3d 1069 (S.D. Cal. 2014)............................................................. 5

**FEDERAL RULES**

Fed. R. Civ. P. 23.............................................................................................. 6, 13

**FEDERAL REGULATIONS**

47 C.F.R. § 64.1200 ..................................................................................................................... 2

**FEDERAL STATUTES**

47 U.S.C. § 227 ............................................................................................................................. 1

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 (2015) ....................................... 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## I. INTRODUCTION

Plaintiffs Alan Brinker, Ana Sanders, and Austin Rugg ("Plaintiffs") reached a settlement ("Settlement") with Defendants Normandin's and OneCommand, Inc. ("Defendants") in this class action lawsuit brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The Court preliminarily approved the Settlement on November 16, 2017. *See* Dkt. No. 171. The Settlement requires Defendants to provide each member of the Settlement Class who submits a valid claim with their choice of a $90 Certificate redeemable at Normandin's for the one-time purchase of goods and/or services, or $40 Cash, regardless of how many claims are made. In addition, Defendants have agreed to implement important changes regarding their calling practices.

Claims Administrator Kurtzman Carson Consultants ("KCC") notified the class members of the Settlement by U.S. Mail, and the claims, exclusion, and objection deadlines have passed. To date, KCC has received 517 valid claim forms, 79 for Certificates, 430 for Cash, and 8 for which no election was made. None of the 8,313 Settlement Class members have objected to the Settlement or counsel's fee request or asked to be excluded from the Settlement. The tacit approval of the Settlement Class weighs strongly in favor of final approval.

The Settlement is the product of disputed litigation, a thorough evaluation of Plaintiffs' claims and the risks of continued litigation, and contested settlement negotiations, including a full-day mediation with experienced JAMS mediator and former Chief Magistrate Judge of the Northern District of California, Edward A. Infante. For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, including but not limited to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 165) and the Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. No. 172), Plaintiffs respectfully request that the Court grant final approval to the Settlement by: (1) approving the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) finally certifying the Settlement Class; (4) granting counsel fees and costs of $150,000, which

represents twenty percent of counsel's lodestar; and (5) approving service awards of $10,000 to Alan Brinker, and $1,000 each to Ana Sanders and Austin Rugg.

## II. STATEMENT OF FACTS

On November 16, 2017 this Court granted Plaintiffs' motion for preliminary approval of the Settlement reached between Plaintiffs and Defendants Normandin's and OneCommand, Inc. Dkt. No. 171 (Preliminary Approval Order). The Settlement requires Defendants to (1) provide each Settlement Class member who submits a valid claim with either a $90 Certificate that is redeemable for the one-time purchase of goods and/or services at Normandin's, or $40 Cash; (2) pay court-approved attorneys' fees and costs of $150,000; (3) pay all notice and claims administration costs; and (4) pay a court-approved $10,000 service award to Class Representative, Alan Brinker, and $1,000 each to Class Representatives Ana Sanders and Austin Rugg. *See generally* Dkt. No. 166 at 21 to 48 ("Settlement Agreement").

The Settlement also provides Settlement Class members with valuable injunctive relief. OneCommand agrees it will use the Interactive Marketing Solutions database and the Neustar database, which allow OneCommand to determine whether phone numbers provided to OneCommand by its customers are cell phone numbers or landlines. Settlement Agreement § III.H.1. OneCommand will also train and instruct its new and current employees regarding the TCPA's requirements at the time of new employment, and will provide updated training on a yearly basis. *Id*. Finally, OneCommand will not make telemarketing calls to consumers unless it first receives certification from the dealerships that they have obtained prior written consent from their customers. *Id*. Although Normandin's does not make prerecorded telemarketing calls, it has also agreed to train and instruct its employees regarding the requirements of the TCPA, and agrees it will not make prerecorded telemarketing calls without first obtaining signed disclosures from consumers, in compliance with 47 C.F.R. § 64.1200(f)(8). *Id*. § III.H.2.

After the Preliminary Approval Order was entered, KCC commenced the notice program. KCC received cellular telephone numbers for 8,313 Settlement Class members, along with the

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 2
CASE NO. 5:14-CV-03007-EJD-HRL

names of the people who Defendants determined owned those telephone numbers ("Settlement Class List" and "Settlement Class members"). Declaration of Justin Brown ("Brown Decl.") ¶ 3. KCC next conducted reverse searches of the telephone numbers on the Settlement Class List to obtain mailing addresses. *Id.* ¶ 3.

KCC conducted the reverse searches in two rounds. In the first round, KCC identified mailing addresses for 7,080 Settlement Class members. Brown Decl. ¶ 3. KCC mailed double-sided postcards to these Settlement Class members on December 15, 2017. *Id.* ¶ 7. In the second round of reverse phone searches, KCC identified addresses for 428 more Settlement Class members. *Id.* ¶ 3. On December 29, 2017, KCC mailed double-sided postcards to the addresses of Settlement Class members identified in the second round of reverse phone lookups. *Id.* ¶ 7. In addition, KCC cross-referenced all mailing addresses against the National Change of Address system, a database which updates addresses for people who filed a change of address with the U.S. Postal Service. *Id*. ¶ 3. All of the postcards KCC mailed included a detachable claim form with prepaid postage, making it easy for Settlement Class members to submit a claim. *Id.* ¶ 7.

For postcards returned as undeliverable, KCC conducted an advanced address search, which allowed KCC to re-mail a substantial number of the returned postcards to new addresses. Brown Decl. ¶ 9. KCC also established a website where Settlement Class members could download Notice and important Court documents, get answer to frequently asked questions, obtain contact information for KCC and Class Counsel, and file a claim electronically. *Id*. ¶ 5. Moreover, KCC established a toll-free telephone number for Settlement Class members that allowed them to speak with a live operator. *Id.* ¶ 6. The notice program implemented by KCC has proven effective: 6,625, or 79.6%, of the 8,313 Settlement Class members received direct notice. *Id.* ¶ 10.

The Settlement Class has reacted favorably to the Settlement. The deadline to opt out of the class or object was February 13, 2018. None of the Settlement Class members opted out of the Settlement, or otherwise objected to the Settlement or to counsel's request for fees, costs, and

service awards. Brown Decl. ¶¶ 11-12. For those Settlement Class members who received notice on December 29, 2017, the parties respectfully request that the Court allow claims, objections, or exclusion requests through February 27, 2018. *Id.* ¶ 8.

To date, 517 Settlement Class members have submitted valid claims, 79 for Certificates, 430 for Cash, and 8 which do not reflect the claimant's election. Brown Decl. ¶¶ 13-14. KCC has mailed deficiency letters to the 8 Settlement Class members who submitted timely claims but failed to elect the Certificate or Cash; those Settlement Class members have ten days to make an election. *Id.* ¶ 15. KCC will provide updated numbers regarding the number of claims, objections, and exclusions by March 5, 2018 so that the parties may advise the Court of any changes. *Id.* ¶ 8.

Counsel filed their Motion for an Award of Fees and Costs and Approval of Service Award in Connection with the Settlement on January 12, 2018. *See* Dkt. No. 172.

### III.   ARGUMENT AND AUTHORITY

When considering a motion for final approval of a class action settlement under Rule 23, a court must determine whether the settlement is "fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988). A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 421–22 (2015). A district court's role in reviewing the substance of a settlement is to ensure that it is "fair adequate, and free from collusion." *Hanlon*, 150 F.3d at 1026.

**A.      The Settlement satisfies the criteria for final approval.**

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

1

(7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.

2

3

*In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir.

4

2015). Applied to this case, the relevant criteria support final approval.

5

1.    The strength of Plaintiffs' case.

6

Although Plaintiffs thoroughly investigated the factual and legal bases for their claims

7

and developed substantial evidence supporting their allegations, Plaintiffs faced significant risks

8

in continuing the litigation had settlement not occurred. For example, Defendants maintain that

9

many of the prerecorded messages sent to consumers were made for informational, rather than

10

telemarketing purposes. *See* Dkt. No. 113 at 11. Moreover, to the extent that the prerecorded

11

messages could be characterized as telemarketing calls, Normandin's insists that many of the

12

consumers provided prior written consent to receive such messages when they signed sales

13

contracts or lease agreements. *See* Dkt. No. 113 at 16. Plaintiffs dispute that Defendants could

14

establish consent, which is an affirmative defense for which they carry the burden. *Van Patten v.

15

Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037

16

(9th Cir. 2017) (whether a TCPA plaintiff actually gave express prior consent is an affirmative

17

defense to be raised and proven by a defendant.). But if the Court agreed with Defendants that

18

many class members provided consent, Plaintiffs risked losing on the merits at summary

19

judgment or trial. With the Settlement, Class members avoid these risks and obstacles to

20

recovery and will receive substantial benefits in a timely fashion.

21

2.    The risk, expense, complexity, and likely duration of further litigation.

22

Another factor in assessing the fairness of the proposed Settlement is the complexity,

23

expense, and likely duration of this lawsuit had settlement not been achieved. *Officers for

24

Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Litigation would be lengthy

25

and expensive if this action were to proceed. Although the parties had completed substantial

discovery at the time they reached agreement, expert work, expert depositions, and extensive

motion work, including Plaintiffs' second motion for class certification, remains. Dkt. No. 166 at

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 5

CASE NO. 5:14-CV-03007-EJD-HRL

¶ 29. Defendants vigorously defended their position during the first round of briefing on class certification and expressed every intention of continuing a spirited defense, absent a settlement. *See* Dkt. Nos. 110, 113 (Defendants' Responses to Motion for Class Certification).

Assuming Plaintiffs succeeded on class certification, it could be at least a year before the case proceeded to trial. Even then, Plaintiffs risked losing. Had Plaintiffs prevailed at trial, Defendants would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Settlement Class members. *See Fulford v. Logitech, Inc.*, No. C-08-2041-MMC, 2010 WL 807448, at *8 (N.D. Cal. Mar. 5, 2010) ("[L]iability and damages issues—and the outcome of any appeals that would likely follow if the Class were successful at trial—present substantial risks and delays for Class member recovery."). By contrast, the Settlement avoids these risks and provides immediate and certain relief provides substantial relief to Settlement Class members without delay.

3.   The risk of maintaining class action status.

This Court has held that for purposes of settlement this case satisfies the requirements of Fed. R. Civ. P. 23, including the rule's predominance requirement. *See* Preliminary Approval Order at 2-5. Defendants have consistently argued that individualized inquiries would need to be made into the circumstances surrounding the calls placed to each class member, including whether Normandin's had prior consent from each individual to call his or her cellular telephone. *See* Dkt. No. 110 at 24-29; Dkt. No. 113 at 23-24. Plaintiffs disagree. Defendants' own records indicate whether a class member consented to the calls by providing a telephone number or signing a contract. *See* Dkt. No. 115 at ¶¶ 7-8. Thus, any person who purportedly consented to receive calls could be manageably identified through objective evidence and barred from any recovery. Class certification is appropriate in this scenario. *See Ikuseghan v. MultiCare Health Sys.,* No. C14-5539 BHS, 2015 WL 4600818, at *7 (W.D. Wash. July 29, 2015) (holding issue of whether standardized forms constitute express consent can be resolved on a class-wide basis); *Agne v. Papa John's Intern., In*c., 286 F.R.D. 559, 566 (W.D. Wash. 2012) (holding it is "not

1    fatal for class definition purposes if a court must inquire into individual records so long as the

2    inquiry is not so daunting as to make the class definition insufficient").

3        The issue Defendants have identified is not one of predominance, but of manageability.

4    Because a settled case will not be tried, manageability considerations are not relevant. *See In re*

5    *Hyundai and Kia Fuel Economy Litig.*, --- F.3d ---, 2018 WL 505343, at * 5 (9th Cir. Jan. 23,

6    2018) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (when "[c]onfronted

7    with a request for settlement-only class certification, a district court need not inquire whether the

8    case, if tried, would present intractable management problems, for the proposal is that there be

9    no trial.")). However, Plaintiffs faced the risk that Defendants' manageability concerns would

      prevent certification outside of the settlement context. Thus, this factor favors approval.

10        4.    The amount offered in Settlement.

11        The Settlement provides up to $332,520 in Cash,[1] or up to $748,170 in Certificates,[2]

12    depending on the number of filed claims and Settlement Class members' choice of a $90

13    Certificate or $40 Cash. Plaintiffs also procured injunctive relief that requires Defendants to

14    change violative calling practices. Settlement Agreement § III.H. To submit a claim, a Settlement

      Class member need only choose either the Certificate or Cash, and tear off the claim form from

15    the postcard, which is already addressed to the claims administrator with postage paid; the

16    Settlement Class member does not need to fill out a complicated claim form or pay any postage.

17    Brown Decl., Exh. A. Alternatively, Settlement Class members may submit a claim for the

18    Certificate or Cash by visiting the settlement website and filling out a simple form. *Id.* ¶ 5. To

19    date, 517 Settlement Class members have submitted valid claims. *Id.* ¶ 13. The parties have

20    agreed to extend the claims period to February 27, 2018 for Settlement Class members who,

      following a second round of reverse look-ups for valid mailing addresses, received notice mailed

21    on December 29, 2017. *Id.* ¶ 8.

22

23    [1] 8,313 Settlement Class members x $40 = $332,520

      [2] 8,313 Settlement Class members x $90 = $748,170

24

25    PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
      AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
      APPROVAL OF CLASS ACTION SETTLEMENT - 7
      CASE NO. 5:14-CV-03007-EJD-HRL

Although Settlement Class members theoretically could recover $500, or up to $1,500, per violation were they to prevail in ligation, the benefits are in line with awards approved in other TCPA settlements. *See, e.g., Estrada v. iYogi, Inc.,* No. CV21301989WBSCKD, 2016 WL 310279, at *4 (E.D. Cal. Jan. 26, 2016) (finally approving settlement where class members received $40, regardless of how many claims were made); *Rose v. Bank of Am. Corp*., No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (finally approving settlement where class members would receive between $20 and $40); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) ($30 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014), Dkt. No. 97 (Mar. 31, 2014) ($46.98 per claimant); *Cubbage v. Talbots, Inc.,* No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (finally approving settlement where class members received their choice of $40 cash or $80 certificate); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ($40 per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (between $27.42 and $28.51 per claimant).

Additionally, if approved by the Court, Defendants will pay Mr. Brinker a service award not to exceed $10,000, and awards not to exceed $1,000 each to Ms. Sanders and Mr. Rugg, as compensation for their time and effort serving as class representatives and for the risks they undertook in prosecuting the case. Settlement Agreement § III.I. The Settlement also provides that if Court-approved, Defendants will pay for $150,000 of attorneys' fees and costs to compensate and reimburse counsel for all of the work already performed in this case and all of the work remaining to be performed in connection with the Settlement. *Id.* § III.J. The enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees and costs. *Id.* Finally, Defendants are paying KCC for costs to issue notice, administer the Settlement, process claims for Certificates or Cash, and issue certificates and checks to members of the Settlement Class. *Id.* at § III.F.4. To date, KCC has incurred fees and costs totaling

$43,568.82, and estimates it will cost Defendants another $17,924.59 to $23,424.59 to complete the administration. Brown Decl. ¶ 17. Defendants will pay Plaintiffs' service awards, any Court-awarded attorneys' fees and expenses, and administration costs, separate and apart from the relief to the Settlement Class.

In exchange for these benefits, Settlement Class members agree to release Defendants from claims asserted in the Third Amended Complaint. Settlement Agreement § III.O. The Settlement Agreement's release is narrowly-tailored and fundamentally fair. Settlement Class members are not releasing Defendants from liability for claims not alleged in the Third Amended Complaint. This factor favors approval.

5. The extent of discovery completed and the stage of the proceedings.

Final approval is favored because substantial investigation, discovery, and motions practice took place prior to the Settlement. Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable. Plaintiffs' counsel propounded and responded to written discovery and diligently reviewed the information that Defendants produced. Dkt. No. 166 at ¶¶ 21-23. Plaintiffs' counsel deposed key personnel of both Normandin's and OneCommand, and through these depositions learned essential information about Defendants' telemarketing practices. *Id.* ¶ 23. Counsel also conducted third-party discovery to obtain additional information regarding the contractual relationship between Defendants and any controlling or affiliated companies that could potentially bear responsibility for Plaintiffs' claims. *Id.* ¶ 24. Additionally, counsel briefed a class certification motion, a process that clarified the evidence and crystalized the claims and defenses. *Id.* ¶ 3. Finally, Plaintiffs responded to Defendants' motion to dismiss, and after the Court granted Defendants' motion, successfully moved for reconsideration. *Id.* ¶ 4.

Although work remained by the time the parties reached the Settlement, including additional briefing on class certification, Plaintiffs' counsel were well-informed about the

strengths and weaknesses of their case at the time they entered into the Settlement Agreement. Thus, this factor favors approval.

6. <u>The experience and views of counsel.</u>

In considering a class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc*., 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. 2016) ("[T]he views of Plaintiffs' counsel, who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval.") (citing *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)).

Counsel have extensive experience litigating and settling TCPA class actions, consumer class actions, and other complex matters. Dkt. No. 166 at ¶¶ 17-20; Dkt. No. 175 at ¶¶ 5-6; Dkt. No. 176 at ¶¶ 7-8. They have conducted an extensive investigation into the factual and legal issues raised in this litigation. Dkt. No. 166 at ¶¶ 21-23. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement. Here, counsel believes the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole. Dkt. No. 166 at ¶ 28.

7. <u>The presence of a governmental participant.</u>

No governmental entity is a party to this action. However, notice of the Settlement has been provided to the Attorneys General of each of the fifty states, the District of Columbia, and each of the five recognized U.S. Territories. *See* Brown Decl. ¶ 4. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to class action settlement, CAFA presumes that, once put on notice, either state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *14 (N.D. Cal. April 22, 2010). Not one governmental entity has objected to the

1    Settlement. Brown Decl. ¶ 4. Thus, this factor favors approval.

2              8.       The reaction of Settlement Class members.

3         A positive response to a settlement by the class further supports final approval. *Hanlon*,

4    150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the

5    offer and stayed in the class presents at least some objective positive commentary as to its

6    fairness"). Here, the reaction to the Settlement has been positive. Out of a Settlement Class of

7    8,313, no Settlement Class members have opted out of the Settlement or objected to the

8    Settlement or to counsel's request for reasonable attorneys' fees, costs, and service awards to

9    Plaintiffs. The lack of objections and opt-outs indicate class-wide support for the Settlement and

     weigh in favor of approval.

10   **B.       The Settlement is the result of informed, arm's-length negotiations.**

11        The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-

12   collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

13   2009). The Court's role is to ensure that "the agreement is not the product of fraud or

     overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

14   whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (internal

15   quotes and citations omitted); *see also In re Online DVD*, 779 F.3d at 944 (noting settlements in

16   class actions "present unique due process concerns for absent class members," including the risk

17   that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods.*

18   *Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2010)).

19        The Settlement Agreement is the result of intensive, arm's-length negotiations between

20   experienced attorneys for the parties who are highly familiar with class action litigation in

     general and with the legal and factual issues of this case in particular. Counsel are particularly

21   experienced in the litigation, certification, trial, and settlement of TCPA cases similar to this

22   case. Dkt. No. 166 at ¶¶ 17-20; Dkt. No. 176 at ¶¶ 7-8. To reach the Settlement, the parties first

23   participated in a full day in-person settlement conference with JAMS mediator and former Chief

24

25   PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
     AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
     APPROVAL OF CLASS ACTION SETTLEMENT - 11
     CASE NO. 5:14-CV-03007-EJD-HRL

Magistrate Judge of the Northern District of California, Edward A. Infante, and afterward continued to work toward settlement (while steadfastly litigating the case). Dkt. No. 166 at ¶¶ 2-3. The Settlement Agreement requires Defendants to provide Certificates or Cash to every Settlement Class member who submits a valid, timely claim, regardless of how many claims are made. Settlement Agreement § II(A)(3), (4). Settlement Class members who elect Certificates can use the Certificates for the one-time purchase of goods or services at Normandin's valued at $90. *Id.* at § II(A)(3). In the alternative, Settlement Class members may elect instead to receive a cash award of $40. *Id*. at § II(A)(4). After making their election, Settlement Class members need simply sign the claim form and drop it in the mail, or submit an online claim. Brown Decl., Exh. A.

The Settlement exhibits none of the "warning" signs that indicate possible collusion. *See In re Bluetooth*, 654 F.3d at 946–47. Settlement approval does not depend upon approval of counsel's fees. Settlement Agreement at § III.J. Moreover, counsel have not requested a disproportionate distribution of the Settlement. Rather, Plaintiffs' fee request, which was negotiated only after the substantive terms of the Settlement Agreement were agreed upon, is twenty percent of the lodestar that counsel incurred in this case. *See* Dkt. No. 172 at p. 7. At hourly rates typically approved in this district, counsel have incurred $745,920 in fees[3], and $41,065.40 in out-of-pocket costs. *Id.* Indeed, even if based upon the percentage-of-recovery method, counsel's fee request of between 11.7% and 21% of the total settlement value is a reasonable range that has been approved by courts in this circuit. *Id.* at 18.

Finally, in negotiating the Settlement Agreement, counsel also had the benefit of years of experience litigating class actions and a familiarity with the facts of this case. Dkt. No. 166 at ¶¶ 17-20; Dkt. No. 175 at ¶¶ 5-6; Dkt. No. 176 at ¶¶ 7-8. Such negotiations are prima-facie evidence of a settlement that is fair and reasonable. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal.

---

[3] This number does not include the fees Class Counsel incurred in drafting this motion.

1979)) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

**C.     The notice program is constitutionally sound.**

This Court has already determined that the proposed notice and administration plan meets the requirements of Rule 23(c)(2)(B). Preliminary Approval Order at III(C). KCC implemented an effective notice program:  6,625 (79.6%) of the 8,313 Settlement Class members received direct notice. Brown Decl. ¶ 10. KCC has maintained the settlement website, which provides necessary information about the Settlement, and allows Settlement Class members to submit online claims. *Id.* ¶ 5. No later than the Settlement's Effective Date, KCC will mail Certificates to those Settlement Class members who elected Certificates and checks to those Settlement Class members who submitted claims for Cash. Settlement Agreement at § III.G.

The notice program has been successful. Approximately 6.2%[4] of the Settlement Class List submitted valid claims, which is in line with claims rates in other TCPA settlements. *See, e.g., Davenport v. Discover Financial Services, et al.*, No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) (approving settlement with 3.4% claims rate); *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985254, at *1 (N.D. Cal. May 27, 2016) (approving settlement with 2.5% claims rate); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (approving settlement where "[o]ut of about 7 million individuals in the Class, 227,701 individuals have made claims," approximately 3.2%); *Global Educ. Servs., Inc. v. Intuit, Inc.*, No. C09-944 RSL, Dkt. No. 91 (W.D. Wash. 2012) (approving settlement with a .5% claims rate); *McClintic v. Lithia Motors, Inc.*, No. C11859 RAJ, Dkt. No. 50 (W.D. Wash. Oct. 23, 2012) (approving settlement with a 4.16% claims rate); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR (W.D. Wash. 2012) (approving settlement with a 2.2% claims

---

[4] In their memorandum of points and authorities in support of fees, costs and service awards, Plaintiffs noted that early claims rate data suggested a 40% rate. Dkt. No. 172 at 11. However, after investigating the high rate, KCC concluded that most of those claims, all of which were filed electronically, were invalid as they could not be matched with verified names or phone numbers on the Settlement Class List. *See* Brown Decl. ¶ 13.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 13
CASE NO. 5:14-CV-03007-EJD-HRL

rate). In sum, the notice program implemented by KCC has provided due and adequate notice of these proceedings and satisfies the requirements of due process.

**D.    The Settlement Class should be finally certified.**

In its Preliminary Approval Order, this Court granted class certification for settlement purposes only. Dkt. No. 171 at § IV(1). Specifically, having determined that the Settlement Class is sufficiently numerous, the Court agreed with Plaintiffs that the commonality requirement was satisfied by the following common questions: (1) whether OneCommand used an automated telephone dialing system to call potential consumers' cell phones; (2) whether Normandin's obtained valid prior express consent from consumers; and (3) whether Normandin's is vicariously liable for calls placed by OneCommand. Preliminary Approval Order at 3-4. The Court further found that Plaintiffs and Settlement Class members suffered substantially identical injuries, based on Defendants' practice of placing automated calls, thus satisfying typicality. *Id.* at 4. Next, the Court found that Plaintiffs and their counsel did not have conflicts of interest with other Settlement Class members, and that counsel has and will continue to pursue this action vigorously on behalf of the class in light of counsel's reputation, qualifications, and experience representing clients in consumer protection class actions. *Id.* at 4-5. Finally, in addition to finding that a class action is the most efficient and effective means of resolving this controversy, the Court appropriately found that the question of law and fact common to all class members— whether Defendants violated the TCPA by placing autodialed calls to cell phones without the recipients' consent—satisfied the predominance requirement. *Id.* at 5.

The rigor with which the Court approached class certification is distinguishable from the facts in *In re Hyundai,* where the Ninth Circuit recently vacated the district court's approval of a settlement where certification was based "on the mistaken assumption that the standard for certification was lessened in the settlement context." 2018 WL 505343 at *14. *In re Hyundai* is also distinguishable in that it involved the standards applicable when a district court is asked to approve a settlement of a nationwide class involving a choice of law analysis. *Id.* at *11. In

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 14
CASE NO. 5:14-CV-03007-EJD-HRL

contrast to *Hyundai*, the Settlement Class' claims are governed solely by federal law, so there are no choice of law issues to consider.

For all the reasons set forth in Plaintiffs' preliminary approval briefing and the Preliminary Approval Order, which reflect the rigor by which the Court must evaluate (and did evaluate) whether the Settlement Class satisfies the Rule 23 requirements for class certification, the Court should finally certify the Settlement Class.

**E.     Counsel's request for fees, costs, and service awards should be granted.**

Not a single Settlement Class member objected to counsel's request for reasonable attorneys' fees, costs and service awards to Plaintiffs. For all the reasons set forth in Plaintiffs' Motion for an Award of Fees and Approval of Service Awards in Connection with the Settlement and in the supporting declarations submitted by counsel (Dkt. Nos. 172, 173, 175, 176), counsel respectfully request that the Court award (1) their requested $150,000 in fees and out-of-pocket costs; and (2) awards of $10,000 to Class Representative Alan Brinker, and $1,000 each to Class Representatives Ana Sanders and Austin Rugg, for the service they provided to the Settlement Class by stepping forward to prosecute this case.

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) approving the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) finally certifying the Settlement Class; (4) granting counsel an award of $150,000 in fees and out-of-pocket costs; and (5) approving awards of $10,000 to Class Representative Alan Brinker, and $1,000 each to Ana Sanders and Austin Rugg.

1

RESPECTFULLY SUBMITTED AND DATED this 22nd day of February, 2018.

2

TERRELL MARSHALL LAW GROUP PLLC

3

4

By:   /s/ Beth E. Terrell, CSB#178181
     Beth E. Terrell, CSB #178181
     Email:  bterrell@terrellmarshall.com

5

     Mary B. Reiten, CSB #203412
     Email:  mreiten@terrellmarshall.com

6

     Adrienne D. McEntee, *Admitted Pro Hac Vice*
     Email:  amcentee@terrellmarshall.com

7

     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869

8

     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450

9

10

     Steven M. Tindall, CSB #187862
     Email:  smt@classlawgroup.com

11

     GIBBS LAW GROUP LLP
     505 14th Street, Suite 1110

12

     Oakland, California 94612-1406
     Telephone: (510) 350-9700

13

     Facsimile: (510) 350-9701

14

     Rob Williamson*, Admitted Pro Hac Vice*
     Email:  roblin@williamslaw.com

15

     Kim Williams*, Admitted Pro Hac Vice*
     Email:  kwilliams@williamslaw.com

16

     WILLIAMSON & WILLIAMS
     2239 West Viewmont Way, West

17

     Seattle, Washington 98199
     Telephone: (206) 295-3085

18

     *Attorneys for Plaintiffs and the Proposed Class*

19

20

21

22

23

24

25

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 16
CASE NO. 5:14-CV-03007-EJD-HRL

1

<u>CERTIFICATE OF SERVICE</u>

2

    I, Beth E. Terrell, hereby certify that on February 22, 2018, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

        Andrew V. Stearns, SBN #164849
        Email:  astearns@boglawyers.com

6

        Robert B. Robards, SBN #166855
        Email:  rrobards@boglawyers.com

7

        ROBARDS & STEARNS
        718 University Avenue, Suite 216

8

        Los Gatos, California 95032
        Telephone: (408) 214-6432

9

        Facsimile: (408) 560-9592

10

        *Attorneys for Defendant Normandin's*

11

        Sean P. Flynn, SBN #220184
        Email:  sflynn@gordonrees.com

12

        GORDON & REES LLP
        2211 Michelson Drive, Suite 400

13

        Irvine, California 92612
        Telephone: (949) 255-6950

14

        Facsimile: (949) 255-2060

15

        Daniel S. Kubasak, SBN #222336
        Email: dkubasak@gordonrees.com

16

        GORDON & REES LLP
        275 Battery Street, Suite 2000

17

        San Francisco, California 94111
        Telephone: (415) 986-5900

18

        Facsimile: (415) 986-8054

19

20

21

22

23

24

25

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 17
CASE NO. 5:14-CV-03007-EJD-HRL

1
Steven C. Coffaro, *Admitted Pro Hac Vice*
Email:  scoffaro@kmklaw.com

2
Drew Hicks, *Admitted Pro Hac Vice*
Email: dhicks@kmklaw.com

3
KMK LAW
One East Fourth Street, Suite 1400

4
Cincinnati Ohio 45202
Telephone: (513) 579-6400

5
Facsimile: (513) 579-6457

6
*Attorneys for Defendant OneCommand, Inc.*

7
DATED this 22nd day of February, 2018.

8
TERRELL MARSHALL LAW GROUP PLLC

9

10
By:   /s/ Beth E. Terrell, CSB #178181
Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com

11
936 North 34th Street, Suite 300
Seattle, Washington 98103

12
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

13

14
*Attorneys for Plaintiffs and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25
PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 18
CASE NO. 5:14-CV-03007-EJD-HRL